1  **NELSON W. GOODELL, ESQ., SBN 264734**
   The Goodell Law Firm
2  1750 Montgomery Street, Suite 139
   San Francisco, CA 94111
3  Tel. No. (415) 954-7151
   Fax No. (415) 954-7150
4
5              **UNITED STATES DISTRICT COURT**
6             **NORTHERN DISTRICT OF CALIFORNIA**
7  RICHARD PEY,                    ) Case No. 3:11-cv-02922-SC
                                   )
8  Plaintiff,                      ) **PLAINTIFF RICHARD PEY'S NOTICE**
                                   ) **OF OPPOSITION AND OPPOSITION TO**
9       v.                         ) **WACHOVIA MORTGAGE**
                                   ) **CORPORATION AND WELLS FARGO**
10                                 ) **BANK, N.A.'S MOTION TO DISMISS**
   WACHOVIA MORTGAGE               ) **PLAINTIFF'S FIRST AMENDED**
11                                 ) **VERIFIED COMPLAINT;**
   CORPORATION; WELLS FARGO BANK,  ) **MEMORANDUM OF POINTS AND**
12                                 ) **AUTHORITIES IN SUPPORT THEREOF**
   N.A.; and NDEX WEST, LLC,       )
13                                 ) Hearing Date: November 18, 2011
   Defendants.                     ) Time: 10:00 a.m.
14                                 ) Courtroom: 1
                                   ) Judge: The Hon. Samuel Conti
15                                 )
                                   )
16                                 )
                                   )
17                                 )
                                   )
18                                 )
19
20  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**
21       PLEASE TAKE NOTICE that on November 18, 2011 at 10:00 a.m., in Courtroom 1 of
22  the above-entitled court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, plaintiff
23  Richard Pey (the "Plaintiff") will oppose Wachovia Mortgage Corporation ("Wachovia") and
24  Wells Fargo Bank, N.A.'s ("Wells Fargo") (collectively "the Defendants") motion to dismiss the
25  Plaintiff's First Amended Verified Complaint pursuant to the Federal Rules of Civil Procedure
26
27  Rules 8, 9 and 12(b)(6).
28

This opposition is based upon this notice, the accompanying memorandum of points and authorities, the complaint, and any argument that may be presented at the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

In response to the plaintiff's first amended verified complaint, the defendant again responds with incorrect procedural objections as to why the plaintiff is not entitled to the relief sought herein.  Notably, very little of the defendants' brief addresses the substance of the plaintiffs' claims.  The evidence that was presented to the Court at the hearing on the motion for the preliminary injunction clearly demonstrated that the defendants did not contact the plaintiff to explore his options to avoid foreclosure before recording the Notice of Default, upon which the foreclosure sale of plaintiff's home is based, nor did the defendants exercise "due diligence" in attempting to do so.  Furthermore, the plaintiff presented testimony that he relied upon the obfuscating terms of the loan documents (which have been held to have violated the causes of action in this case in a score of other cases, including a case decided in this judicial district) in deciding to obtain this loan, and also testified explaining why he did not realize that this loan contained a negative amortization feature until two years after he got this loan.

Moreover, the plaintiff testified that he never received any notice of the class action that Wachovia relies upon to claim that this action is barred by the principle res judicata and, per binding Supreme Court precedent, a lack of notice of a class action means that any purported class member is free to litigate his own claims against the settling defendant.  Finally, despite the fact that the plaintiff has substantial evidentiary support for his claims (which were put before the Court in her motion for a preliminary injunction), all that is issue in the instant motion is whether or not the plaintiff has properly pleaded facts sufficient to state a claim for each of his

seven causes of action. *Bell Atlantic v. Twombly*, 550 U.S. 544, (2007). The plaintiff has easily met this standard, and the Court should reject this unwarranted motion and allow this case to proceed towards a trial on its merits.

Furthermore, the plaintiff objects to this Court taking judicial notice of the truthfulness of both the Declaration of Compliance attached to the Notice of Default or the "Opt Out" List included in the class action litigation that was recently settled by these defendants. . Federal Rule of Evidence § 201 provides that a "judicially noticed fact must be one not subject to reasonable dispute that is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

In *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001), the Ninth Circuit held that a court may take judicial notice that certain hearings were conducted, that a Waiver of Extradition was signed, and that a party waived his right to challenge his right to extradition due to an executed waiver of extradition form. *Id.* at 687. However, the Ninth Circuit explicitly overruled the district court's decision to take "judicial notice of disputed facts stated in public records." *Id.* Similarly, in the instant case, the defendants are attempting to have the Court take judicial notice of disputed facts that are hotly disputed, and is certainly not a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Consequently, to the extent that the defendant is requesting the Court to take judicial notice that any individual attempted to contact the plaintiff to explore his options to avoid foreclosure or that the plaintiff received notice of the class action referenced by the defendant in its moving papers, the plaintiff objects.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Richard Pey signed a Note and Deed of Trust in November 2006 in favor of World Savings Bank, FSB. As required by federal law, Wachovia included a Truth in Lending Disclosure Statements ("TILDS") that is supposed to clearly and conspicuously disclose the terms of the plaintiff's loan. The TILDS contained a ten-year payment schedule that provided for low monthly payments for the plaintiff. *See Exhibit 2*. The TILDS also indicated that the Annual Percentage Rate was a quite favorable 7.107 % for this loan. Based upon the low monthly payments and low APR, the plaintiff decided to choose this loan to refinance his home. At no time during the negotiation process did any representative of World Savings inform him that if he followed the payment schedule in the TILDS that his principle would get higher because this payment was not even paying the interest on the loan (a phenomenon called "negative amortization").

The Note signed by the plaintiff stated that "I will pay principle by making payments every month." See Note, Exhibit 1,¶ 3(A). However, during the course of the plaintiff's loan, none of his payments have gone towards principle, as he has always followed the payment schedule outlined in the TILDS that does not even cover all of the *interest*. The Note also states that "[f]rom time to time, my monthly payments *may be* insufficient to pay the total amount of monthly interest that is due." See Note, Exhibit 1,¶ 3(E). However, the reality was that the payment amount listed in the TILDS were at all times insufficient to pay the total amount of interest due on the note. Furthermore, the TILDS did not explain how the initial monthly payments were calculated. In fact, none of the documents explain how the amount of the plaintiff's initial monthly payments are derived. Moreover, the interest rate listed in the Annual Percentage Rate ("APR") is *not* the interest rate listed in section 2(A) of the note the principal listed in section 1 of the note. That rate is listed as 6.840%, but the payment schedule listed in the TILDS is not even close to 6.840%. If using a mortgage calculator, the percentage rate of

1    plaintiff's payments were approximately 1.5%.  Finally, since the plaintiff's payments did not

2    increase, the plaintiff did not realize the subtle way in which his balance was increasing until

3    approximately two years later.

4        World Savings Bank, FSB's name was changed on November 8, 2008.  As stated above,

5    the plaintiff did not realize that he was not even paying enough to cover the interest on the Note

6

7    until the summer of 2008 when noticing that the outstanding balance had gotten significantly

8    higher.  However, the plaintiff never missed a payment during this time period.  The plaintiff fell

9    into default on this loan in the spring of 2009 solely because Wachovia paid the plaintiff's

10    property tax bill while the plaintiff was in the midst of negotiating with the Alameda County

11    Assessor's Office to lower the assessed value because the property had been assessed at an

12    artificially high rate.

13        In September 2009, the plaintiff received a Notice of Default from WachoviThe plaintiff

14    was never contacted in person, or telephonically, by Wachovia, nor any of the other defendants,

15

16    to explore his options to avoid foreclosure in the spring of 2009.  Moreover, the plaintiff never

17    received any letters, through regular or certified mail, requesting him to contact Wachovia to

18    explore those options to avoid foreclosure.

19

20        On December 21, 2010, now-Governor of California Edmund Brown, while he was still

21    Attorney General of California, entered into a settlement agreement with Wells Fargo, N.A. over

22    the unlawful "pick-a-pay" loans they are now responsible for, as a result of acquiring Wachovia

23    who had previously acquired World Savings.  In this settlement agreement, Wells Fargo

24

25    promises that they will be sending out loan modification offers to borrowers in an expeditious

26    manner.  However, prior to the commencement of this action, the plaintiff never received any

27    correspondence regarding a loan modification for his loan, even though his loan fits squarely

28    within the purview of the settlement agreement.

### III.   <u>LEGAL STANDARDS</u>

The only salient issue before a federal district court in a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure is whether a complaint contains "sufficient factual matter, *accepted as true*, to 'state a claim for relief that is plausible on its face.' A Claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

As the Supreme Court held in *Iqbal* and *Twombly*, motions to dismiss a claim for failure to state a claim upon which relief may be granted are reserved for situations in which plaintiffs have failed to state facts (facts are automatically assumed to be true for the purpose of this motion) that lead to any "cognizable legal theory." *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the ASSUMPTION THAT ALL THE allegations in the complaint are true") (emphasis in original); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"), *Scheuer v. Rhodes*, 416 U.S. 232, 236 (a properly pleaded complaint may proceed even if appears that is factual basis is so weak "that a recovery is remote and very unlikely."); *al-Kidd v. Ashcroft*, 2009 WL 2836448 (Sept. 4, 2009) ( "[W]e proceed as we must in a review of *all* Rule 12(b)(6) motions, accepting as true *all* facts alleged in the complaint, and drawing *all reasonable inferences in favor of the plaintiff*") (emphasis added); *Balistreri v. Pacifica Police Department* , 901 F.2d 696, 699 (9th Cir. 1988).

Finally, in the even that a Court does find that a complaint does not properly allege facts that give rise to liability for some of the causes of action, the policy of granting leave to amend a complaint, rather than outright dismissing a case, is extremely liberal. *Foman v. Davis*, 371 U.S. 178, 182 (1961).

## IV. ARGUMENT

### A. The FAC Pleads Facts Sufficient Facts to State All Seven Causes of Action

The FAC clearly and unambiguously states facts sufficient for all of the causes of action contained therein. The defendants motion to dismiss is virtually identical to its opposition to the plaintiff's request for preliminary injunctive relief. The new arguments it does make are unavailing and provide no defense for the properly-pleaded facts alleged in the plaintiff's FAC, and certainly do not support the relief sought in the instant motion (which assumes that all of the facts alleged in the FAC are true).

#### 1. The Plaintiff Has Properly Plead Facts to Support a Claim for Violations of California Civil Code § 2923.5

The defendants make a host of incorrect legal, and factual, assertions regarding why the plaintiff's claim that the defendant violated California Civil Code § 2923.5 (hereinafter "Section 2923.5") is not meritorious. As an initial matter, there are only two ways that a lender may comply with California Section 2923.5: either speaking with a borrower at least 30 days, in person or by telephone, *prior* to recording a Notice of Default, or exercising "due diligence" in attempting to contact a borrower to explore their options to avoid foreclosure. For the "contact" requirement, the precise language used in the statute provides: "(2) A mortgagee, beneficiary, or authorized agent shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Section 2923.5(2). In order to satisfy the "contact" requirement, a lender *must* discuss the traditional ways that a borrower may "avoid" foreclosure with a borrower, such as a loan modification, a forbearance agreement, or a repayment plan. *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 210.

Alternatively, a lender must use "due diligence" to attempt to contact a borrower to explore their options.  In order to satisfy this prong of the statute, a lender *must* meet *all* of the laundry list of requirements outlined in the statute.  California Civil Code § 2923.5(g) provides: that, in order to satisfy the "due diligence" requirements, a lender must do *all* of the following: send a first-class letter to the borrower with the toll-free telephone number made by HUD; attempt to contact the borrower on three different times on three different days; send a certified letter, return receipt requested; and the lender shall post a prominent link on the homepage of its Internet webpage which provides options that may be available to borrowers unable to afford their mortgage (including a list of documents that are needed, and a toll-free telephone number).

Notably, this provision provides for a laundry list of action, *all of which must be done*, in order for a lender to satisfy the "due diligence" requirement under the statute.   However, Wachovia failed to meet *any* of these requirements in this case: the plaintiff never received a first-class letter with the HUD telephone, nor did he receive any telephone calls from Wachovia. Furthermore, he never received a certified letter, return receipt requested, informing him of a way to contact them that will provide access to a live representative during business hours. The plaintiff is not aware whether or not there was a prominent link on Wachovia's website during the material time period, but that potential fact is of little import considering that the defendants did not comply with other requirements of California Civil Code Section 2923.5 (and the statute specifically provides that *all* conditions must be met in order for a lender to have exercised "due diligence").

In sum, there is no genuine dispute that the plaintiff has properly plead facts that show a violation of California Civil Code Section 2923.5 and, per California appellate precedent as well as courts located in this judicial district, *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 2654093,

*4+ (N.D. Cal. Jul. 6, 2011); *Sharma v. Provident Funding Associates, LP*, No. C 09-5968 VRW at *4 (ND Cal 2010); *Paik v. Wells Fargo Bank, N.A.* 2011 WL 109482 (N.D. Cal. Jan. 13, 2011), this Court should reject out-of-hand the defendants' attempt to dismiss this claim.

**2.  World Savings Fraudulently Concealed the Fact that Negative Amortization Was Certain to Occur if the Plaintiff Followed the Payment Schedule Listed in the Truth in Lending Disclosure Statement**

As an initial matter, it is important to point out that the exact type of loan at issue in this case, a "negative amortization" loan issued by World Savings (whom Wachovia and Wells Fargo acquired), has been the subject of an investigation by the Attorney General of California. *See Exhibit 8.* Wachovia promised that they would consider all borrowers who have been this type of loan for loan modifications (although they breached this promise in respect to the plaintiff, as stated earlier). *Id.*   There is no genuine question that the loan at issue violates California state laws prohibiting unfair and fraudulent business practices, or federal law (i.e., the Truth in Lending Act, which was the subject of the class action).  Moreover, less than two months ago, the Fourth District of the California Court of Appeals, in a published opinion, overturned a trial court's sustaining of a demurrer (the California equivalent of a Rule 12(b)(6) motion) for state law claims of fraud and unfair business practices also on a negative amortization loan containing language and terms extremely similar to plaintiff's. [*Boschma v. Home Loan Center*, (4th Dist. Cal. App.) 08-10-11].

Under California law, actual fraud is defined, partially, as "[t]he suppression of that which is true, by one having knowledge or relief of the fact" or "[a]ny other act fitted to deceive." (Cal. Civ. Code, § 1752, subds. (3), (5).  "Deceit" is defined as "[t]he suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710, subd. (3), *see also*

*Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4[th] 282, 292 ["active concealment or suppression of facts . . . is the equivalent of a false representation."].

Furthermore, in order to state a prima facie case for fraudulent concealment or omissions, a plaintiff must show that "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 748.

Beginning with the first element, the plaintiff has demonstrated that the defendants concealed or suppressed material facts by producing the Note and the TILDS documents. A federal district court and a California Court of Appeal have both recently ruled that the production of these documents, along with an allegation that none of the plaintiff's payments have gone toward principal, suffices to meet this element. *Boschma*, at 22; *Jordan*, 745 F.Supp.2d at 1096 ("Plaintiffs' evidence is the mortgage instrument, which provides the specific content of the allegedly false representations related to negative amortization, as well as the date and place of the alleged fraud. While the precise identities of the employees responsible . . . are not specified in the loan instrument, defendants possess the superior knowledge of who was responsible for crafting these loan documents.").

Similar to *Boschma*, the loan documents in the instant case state that (1) Section 2(B) – "The interest rate I will pay may change on the first date of October 1[st], 2006, and on that day every month thereafter", (2) Section 3(A) – "I will pay principal and interest by making my

monthly payments every month"; (3) Section 3(B) – "Each of my initial monthly payments will be in the amount of US $1,553.05"; (4) "From time to time, my monthly payments may be insufficient to pay the total amount of monthly interest that is due . . .". **See Exhibit 2**, *Boschma*, at pg. 23.  In *Boschma*, the Fourth District of the California Court of Appeals ruled that the plaintiff's complaint "adequately pleaded that material facts were concealed by inaccurate representations and half-truths . . .Plaintiffs' actual interest rates and monthly payments sufficient to amortize the loan (or at least pay the accruing interest) were hidden in the complexity of the Option ARM contract terms." *Id.*  The Court stated that "[t]he fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced.  There is no duty resting upon a citizen to suspect the honesty of those with whom he [or she] transacts business.  Laws are made to protect the trusting as well as suspicious.  [T]he rule of caveat emptor should not be relied upon to reward fraud and deception." *Id.* (quoting *Thompson v. 10,000 RV Sales, Inc.* 130 Cal.App.4th 950, 976 (2005).

The primary fraudulent misrepresentation in World Savings' disclosures is the use of a substantially discounted "teaser" payment rather, instead of a rate close to the rate that would result from the application of the variable rate formula in the note (an index plus 3.050 percentage points).  As stated earlier, the teaser rate, in the context of the TILDS, gives a false impression that the cost of credit is much lower than it really is, and also guarantees that the real interest rate (after the first month of the loan) will be greater than the interest rate used to calculate the payment schedule for the first few years of the loan. *Boschma*, at pg. 24.  If the initial interest rate was determined using the Note's actual interest rate, as determined by the variable rate formula, it would be possible that interest rates could actually go down (or remain

constant) after the first payment and no negative amortization would occur. *Id.* Consequently, "the disclosures' conditional language is accurate absent a significantly discounted rate." *Boschma*, at pg. 24. Naturally, an Option ARM loan without this teaser rate "would result in a higher initial interest rate, higher initial minimum payments pursuant to the payment schedule, and a much narrower gap (even if interest rates increased) between the borrower's payment 'options.' Of course, without a teaser rate, the surface attractiveness of Option ARMS would have been greatly diminished precisely because the stated (initial) interest rate and (initial) payment would be higher." *Id.* Just as the Court found last month in *Boschma* that the plaintiff had properly plead concealed or suppressed material facts in the context of a loan extremely similar to the loan at issue in the instant case, this Court should find that the plaintiff has properly plead facts to support this element.

The second element of fraudulent omissions asks whether a defendant has "a duty to disclose the allegedly concealed material facts to plaintiffs?". *Boschma* at pg. 24. Under the federal Truth in Lending Act, the defendant had a duty to clearly and conspicuously describe the terms of the loan to plaintiffs. *Ralston*, 2010 WL 3211931 at pp.*4-*5. Putting aside the Truth in Lending Act, however, the *Boschma* Court found that a lender has a "common law duty to avoid making partial, misleading representations that effectively concealed material facts." *Id.* (citing *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4[th] 1066, 1082-1084; *LiMandri v. Judkins* (1997) 52 Cal.App.4[th] 326, 336.

The third element for a claim for fraudulent omissions in this context asks whether a defendant concealed or suppressed "the truth about negative amortization with the intent to defraud the plaintiff?" *Id.* In this situation, the "defendant intentionally omitted a clear disclosure of the nature of plaintiffs' loan because giving a clear explanation of how the loan

would have punctured the illusion of a low payment, low interest rate." *Id.*   As stated earlier, the plaintiff's loan does not mention how the interest rate for his payments are derived whatsoever, and certainly not in the clear and conspicuous manner required by law.  As the Court held in *Boschma*, such an intentional omission will satisfy this element.

The fourth element for this claim is reliance.  In this situation, the plaintiff did, in fact, rely upon the fraudulent omissions. The plaintiff would not have obtained this loan if he had known its true nature of depriving the equity in his home on a month-by-month basis. There is both federal and state authority for the proposition that plaintiff is reasonable in relying on the loan documents, given the obfuscating manner in which they are written. *Id.; see also Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239; *Ralston v. Mortgage Investors Group, Inc.* (N.D. Cal. Aug. 12, 2010), No. C 08-536 JF) 2010 WL 3211931, *3-6.

Finally, the fifth element of a claim for fraudulent omissions is harm. The plaintiff was indeed harmed by losing equity in his home as a result, and in being the current state of facing foreclosure when he could have potentially refinanced if he had been paying principal and interest since he obtained the loan as the Note stated that he would be.  In *Boschma*, the Court found that the plaintiff had properly pleaded harm for that same reason. *Boschma*, at pg. 25.

**2.   The Plaintiff Has Properly Plead Facts to Support a Claim for Violations of California Business and Professions Code § 17200, et seq.**

California's unfair competition law broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 ( UCL § 17200). "Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent. 'In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not

'unlawful' and vice versa.'"" *Boschma*, pg. 27 (quoting *Puentes v. Wells Fargo Home Mortgage, Inc.* (2008) 160 Cal.App.4th 638, 643-44.).

"[A] practice may be deemed unfair even if not specifically proscribed by some other law." *Korea Supply Co v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143.  A business practice is "unfair" under the UCL if "(1) the consumer injury is substantial; (2) the injury is not outweighed by countervailing benefits to consumers or competition; and (3) the injury could not reasonably have been avoided by consumers themselves." *Boschma*, pg. 27 (citing *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403-1405.

In the context of the UCL, "a fraudulent business practice is one that is likely to deceive members of the public." *Morgan v. AT&T Wireless Services, Inc.* (2009) 177 Cal.App.4th 1235, 1255. "A claim based upon the fraudulent business practice prong of the UCL is 'distinct from common law fraud.'" *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471. While common law fraud requires the perpetrator to known that the statement was actually false and reasonably relied upon by a victim who incurs damages, the UCL merely focuses on "the defendant's conduct, rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general public against unscrupulous business practices." *Boschma*, at pg. 28. Thus, in the context of the UCL, "a fraudulent business practice 'may be accurate on some level, but will nonetheless tend to mislead or deceive . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under" the UCL." *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1471.

In the situation at bar, the loan in question violated the "unfair" and "fraudulent" prongs of UCL 17200 for the same reasons that these loan documents constituted a fraudulent

concealment of the true terms of the plaintiff's loan.  In a recent case, a district court found that a bank had violated UCL 17200, for a loan almost identical to the one at the situation at bar, for containing similarly substantially obfuscating terms. *Jordan*, 745 F.Supp.2d at 1100.  As in that case, the plaintiff has certainly raised a serious questions going to the merits that he "did not discover the certainty of negative amortization" until after he obtained the loan that "the loan documents do not clearly specify the certainty of negative amortization . . .Additionally, the payment schedule does not clearly indicate it is based upon the teaser rate rather than the APR listed on the top of the page." *Id*.  Therefore, plaintiff has sufficiently demonstrated "that an ordinary consumer relying on the plain language of the loan agreement might not have been able to avoid the injury of negative amortization because they did not understand that it was certain to occur." *Id*. (cited with approval by *Boschma*, pg. 29).

In *Boschma*, the Court ruled that it saw "no countervailing value in defendant's practice of providing general byzantine descriptions of Option ARMS, with no clear disclosures explaining that with regard to plaintiff's particular loans, negative amortization would certainly occur if payments were made according to the payment schedule.  To the contrary, a compelling argument can be made that lenders should be discouraged from competing by offering misleading teaser rates and low scheduled initial payments (rather than competing with regard to low effective interest rates, low fees, and economically sustainable payment schedules)." , *Boschma*, pg. 29.  Since the plaintiff's loan is virtually identical to the loan at issue in *Boschma*, the Court should find that the plaintiff has easily plead an adequate fraudulent concealment claim in the situation at bar.

    4.  **The Plaintiff Has Properly Plead a Valid Breach of Contract Claim and a Valid Breach of Covenant of Good Faith and Fair Dealing Claim**

The elements of a claim for breach of contract are: "(1) The contract; (2) Plaintiff's performance; (3) Defendant's breach; (4) Damage to plaintiff." *McDonald v. John P. Scripps Newspaper* (1989) 210 Cal.App.3d 100, 104, quoting Witkin, California Procedure, Pleading § 464 (3rd Ed. 1985).

In the situation at bar, the plaintiff has properly pled the existence of the contract at issue. See FAC 93 and Exhibits 1 and 2. Plaintiff has also properly pled the contractual provision which he alleges Defendants breached. See FAC 94 ["that Plaintiff will pay Principal and interest by making payments each month.""). Finally, Plaintiff has pled performance. See FAC 97.

Furthermore, the Plaintiff has properly alleged that Wachovia breached the contract by failing to apply any portion of Plaintiff's monthly payments toward the principal balance on his loan. FAC 96. Consequently, the plaintiff has properly plead a breach of contract claim.

Similarly, the plaintiff has properly plead a breach of covenant of good faith and fair dealing claim. "[U]nder California law, all contracts have an implied covenant of good faith and fair dealing." *In re Vylene Enterprises, Inc,* 90 F.3d 1472, 1477 (9th Cir. 1996), citing *Harm v. Frasher*, 181 Cal.App.2d 405, 417 (1960). The defendant's only argument in response to the plaintiff's claim is the same argument it makes to the breach of contract claim, which is that the plaintiff cannot state a claim because of the other contradictory language in the Deed of Trust which explains the literally false language in the Note. The defendant's argument should be rejected.

## 5.   The Plaintiff has Properly Plead Wrongful Foreclosure and Declaratory Relief Causes of Action

The plaintiff has properly alleged a claim for "wrongful foreclosure." A "wrongful foreclosure" cause of action is a suit brought in equity challenging the legality of a foreclosure sale. *Munger v. Moore* (1970) 11 Cal.App.3d 1, 6; *Moeller v. Lien* (1994) 25 Cal.App.4th 822, 826; *Anderson v. Heart Federal Sav. & Loan Ass'n* (1989) 208 Cal.App.3d 202, 211. Consequently, "wrongful foreclosure" is indeed a valid cause of action, upon which the plaintiff may seek relief.

The main argument advanced by the defendants' as to why the plaintiff does not have a viable cause of action for "declaratory relief" is that the plaintiff may obtain the relief it seeks in his other causes of action. *See Defendant's Opposition, pg. 16.* However, a finding of liability of the other causes of action would not necessarily lead to the relief sought in this cause of action (which request the Court from proceeding with a foreclosure sale due to the violations of law discussed in the plaintiff's complaint).

**B.   None of the Plaintiff's State Law Claims, Which Are All Based on Laws of General Applicability, are Pre-Empted by the Home Owners Loan Act**

Notwithstanding precedent from this very district involving this same defendant and nearly an identical loan, the defendants argue that the plaintiff's fraud and California Business and Professions Code Section 17200 claims are pre-empted by the Home Owners Loan Act. As an initial matter, 12 C.F.R. 560.2(c) explicitly provides that "[s]tate laws of the following types are not preempted to the extent that they incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:  (1) Contrat and commercial law; (2) Real property law; (3) Homestead laws specified in 12 U.S.C. 1461a(f); (4) Tort law . . ."

The defendants rely upon *Silvas v. E-Trade Mortgage Corp.*, 514 F.3d 1001 (9th Cir. 2008) to argue that all of the plaintiff's claims are pre-empted. However, in that case, the Ninth Circuit also stated that HOLA does not preempt UCL Claims in which the "predicated acts were violations of the general legal duties with which every business must comply." *Silvas*, 421 F.Supp.2d at 1320 (citing *Gibson v. World Sav. & Loan Ass'n*, 103 Cal.App.4th 1291 (2002). In *Mandrigues v. World Savings Bank, FSB, et al.*, in a case involving a loan almost identical to the one in the situation at bar and involving Wachovia Mortgage Corporation, Judge Fogel denied the defendants' motion to dismiss the plaintiff's state law claims, and relied upon the above-cited provision of *Silvas* in his ruling. Judge Fogel noted that the plaintiffs in that case, just like the plaintiff in the instant case, were charging the defendants with violating the "generally applicable duties to refrain from unfair and deceptive business practices." *Mandrigues*, at pg. 3. Furthermore, in two recent cases, this Court, as part of a ruling on motions to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) by Wells Fargo, rejected the defendant's arguments that the plaintiff's fraud claims were preempted under HOLA. *Rumbaua v. Wells Fargo Bank, N.A.* 2011 WL 3740828 (N.D. Cal. Aug. 25, 2011); *Velaverde v. Wells Fargo Bank, N.A.* 2011 WL 3740826. The Court noted that "[t]o the extent that Plaintiff's claims are premised on fraud or promises made by Wells Fargo, such claims are not necessarily preempted, because the only 'requirement' they impose on federal savings banks is that they held by responsible for the statements they make to their borrowers. If these causes of action were preempted, federal savings associations would be free to lie to their customers with impunity." *Rumbaua,* 2011 WL 3740828 at *7; *See also Velaverde,* 2011 WL 3740826 at *5.

In his first amended complaint, the plaintiff alleges that the defendants violated the same duties. FAC ¶ 52. For the plaintiff's claim for UCL violations, the plaintiff alleges that "the

1    instant claim is predicated on the generally applicable duty of any contracting party to not omit

2    material facts, and on the duty to refrain from unlawful, unfair and deceptive business practices.

3    Plaintiff hereby seeks to enforce a general proscription of unfair business practices and the

4    requirement to refrain from deceptive conduct.  The instant claim is predicated on duties that

5    govern anyone engaged in any business and anyone contracting with anyone else."  Moreover,

6
     the plaintiff's common law claim for fraudulent omissions is also similarly styled, and relies
7

8    upon the allegation that defendants have a common law duty to not fraudulently conceal, or omit,

9    material facts from the plaintiffs. FAC ¶ 94.  Consequently, it is clear that HOLA, and

10   specifically, 12 C.F.R. § 560,  does not pre-empt the plaintiff's claims in this case.

11
            There is additional judicial authority for the plaintiff's arguments that his claims are not
12

13   pre-empted.  A score of courts have ruled that, when plaintiffs rely on a state law of general

14   application, the state law is not pre-empted by HOLA.  *See e.g., McKell v. Washington Mutual,*

15   *Inc.* (2006) 142 Cal.App.4th 1457 (implied misrepresentation as to reasonableness of loan related

16
     fees); *Branick v. Downey Savings & Loan Assoc.* (2005) 126 Cal.App.4th 828, superseded on
17

18   other grounds, (2006) 39 Cal.4th 235 (misrepresentations as to disclosed financing fees); *Gibson*

19   *v. World Savings & Loan Assn.* (2002) 103 Cal.App.4th 1291 (misrepresentations related to

20   disclosure of loan costs and fees); *Fenning v. Glenfeld, Inc.* (1995) 40 Cal.App.4th 1285 (fraud

21   claim not preempted because the fraudulent deception had nothing to do with the thrift's lending
22

23   practices). In *Gibson,* the California Corut of Appeal held that HOLA did not preempt a UCL

24   claim.  In that case, the plaintiff sought to use the UCL to enforce the "duties of a contracting

25   party to comply with its contracting obligations."  103 Cal.App.4th 1291, 1301.  Moreover, in

26   *Binetti v. Washington Mutual Bank*, 446 F.Supp.2d 217, 220 (2006), the Court ruled that New

27
     York's consumer fraud statute was not in conflict with the implementing HOLA regulations
28

- 19 -

(specifically, 560.2) and that "the New York Consumer Fraud Statute is precisely the type of general commercial law designed to establish the basic norms that undergird commercial transaction that the OTS has indicated it does not intend to preempt."   Finally, in *In re: Ocwen Loan Servicing, LLC Mortgage Servicing Litigation*, 491 F.3d 638 (7th Cir. 2007), Justice Posner, writing for a Seventh Circuit panel, rejected the defendants' argument that the plaintiff's claims based on common law fraud and the Consumers Legal Remedies Act, Cal. Civ. Code 1750, were pre-empted by HOLA. Id. at 647.  As part of an opinion which the Seventh Circuit denied the defendants' motion to dismiss on pre-emption and other grounds, Judge Posner wrote "[t]he plaintiffs interpret the statute to forbid deceptive practices, such as falsely representing sponsorship or approval of Ocwen's services.  If this is like common law fraud, then it is probably not pre-empted." Id.

In the defendants' opposition, the defendants cite *Jones-Boyle v. Washington Mutual bank, F.A.*, 2010 WL 2724287 (N.D. Cal. Jul. 8, 2010) to argue that "case law is clear that plaintiff's claims are preempted." *See Defendants' Opposition, pg. 11.*  However, in *Jones-Boyle*, the Court explicitly distinguished *Manrigues* from the facts of the situation before it in order to find that, unlike *Manrigues* (which involved the plaintiff's claim that the defendants violated their "generally applicable duty to refrain from unfair and deceptive business practices"), the plaintiffs claim relied solely upon its lending activities (which is what the plaintiff relies upon in the instant case).  Also, the defendant cites *Quintero Family Trust v. OneWest Bank, FSB* 2010 WL 2618729 (N.D. Cal. 2010) as standing for a case in which a court rejected a plaintiff's UCL 17200 claim on the basis that it was pre-empted, but the Court denied the defendants' motion to dismiss in that case on the 17200 cause of action.  The simple fact is that the theories advanced by the plaintiff in this action (which are predicated on common law fraud and general theories of

unfair and deceptive business practices brought under UCL 17200) are not preempted by HOLA, and a contrary ruling would displace a large body of tort law ordinarily reserved to the police powers of the states.

Similarly, the defendants' cursory argument that the plaintiff's California Civil Code Section 2923.5 claims is pre-empted is also erroneous.  Indeed, the *Mabry* Court expressly found that California Civil Code Section 2923.5 was narrowly tailored to specifically avoid being pre-empted. *Mabry*, 185 Cal.App.4th 208, 214 (2010).  Moreover, this Court, in part of an opinion in which it refused to agree with defendants' claims that HOLA pre-empted California Civil Code Section 2923.5, held that the defendants' argument that this statutory provision was pre-empted because it affected how they "service" the loan "could operate to preempt most California foreclosure statutes where the foreclosing entity is a national lender.  Without a more thorough analysis of whether loan servicing is distinct from foreclosure, the Court cannot decide whether California Civil Code Section 2923.5 is preempted by HOLA." *Loder v. World Savings Bank, N.A.* 2011 WL 1884733 at *7 (N.D. Cal. May 18, 2011).  Indeed, the Court's statement was eminently reasonable since, per the defendants' logic, the comprehensive statutory framework of California foreclosure laws (which serve to protect the borrowers of this state from the loss of their home) would be pre-empted, because nearly *any* regulated activity can be construed to affect how a lender "services" a loan.   In addition, this very Court also rejected this same defendant's contention that California Civil Code Section 2923.5 was pre-empted in *Shaterian v. Wells Fargo Bank, N.A.*, 2011 WL 2314151 (Jun. 10, 2011).

### C.   The Plaintiff Never Received Notice of the Class Action.  Thus, Per Binding Supreme Court precedent, a Finding of Res Judiciata Would Violate Plaintiff's Due Process Rights Under the Fifth Amendment of the United States Constitution

As an initial matter, this is an issue that cannot be resolved on a motion brought under a

Rule 12(b)(6) motion, because it involves a disputed issue of fact. Secondly, the plaintiff, in

fact, did not receive notice of the class action. Indeed, the plaintiff testified that he never

received notice of this action at the hearing on the motion for a prelimary injunction to enjoin he

foreclosure sale. In *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156 (1972), the Supreme Court

held that class members must given proper notice before their right to sue over the alleged

malfeasance in the class action are summarily taken away from them. Indeed, the Supreme

Court ruled that FRCP 23 mandates that "[i]ndividual notice must be sent to all class members

whose names and addresses may be ascertained through reasonable effort." *Id.* at 173. Indeed,

the Court suggested that no notice in this context runs roughshod over an individual's due

process rights, as the Court noted, while referencing its previous holding in *Mullane v. Central*

*Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), that "notice and opportunity to be heard were

fundamental requisites of the constitutional guarantee of procedural due process." *Id.* at 174.

In their motion to dismiss, Wachovia attempts to offer an "opt-out" list to somehow

conclusively prove that the plaintiff cannot bring the instant action. However, Wachovia has not

produced a shred of evidence that the plaintiff was ever given notice of this class action, and the

plaintiff has presented testimony that he did not receive such notice. If the plaintiff did not

receive notice of the class action, it was impossible to know that he had to "opt out" to preserve

his rights to litigate this action. Moreover, the plaintiff brought this action even before the

judgment was final (as the district court's judgment, which was entered on May 17, 2011, was

appealed to the Ninth Circuit and only became final in the past couple of weeks). In any event,

none of this can be decided on a motion to dismiss because the question of notice is a question of

fact, and such disputed questions of fact may not be decided in motion to dismiss under FRCP 12(b)(6).

D. **The Tender Rule Does Not Apply to Lawsuits Brought *Prior* To a Foreclosure Sale And, In any Event, Is Not Applicable to Disputes Over the Amount Due, or Whether Any Amount is Due to a Particular Party**

As an initial matter, the "tender rule" cited by the defendants does not operate as a brightline rule in actions brought prior to a foreclosure sale, in which a plaintiff-homeowner is seeking to enjoin an unlawful or fraudulent sale. In cases involving meritorious claims brought by property owners *before a foreclosure sale has happened*, numerous California Courts of Appeal and Supreme Court panels have issued injunctive relief enjoining a trustee's sale without requiring a tender of the entire amount due and owing on a loan. *Baypoint Mortgage Corp. v. Crest Premium Real Estate Trust* (1985) 168 Cal.App.3d 818, 823; *Stockton v. Newman* (1957) 148 Cal.App.2d 558; *More v. Calkins* 85 Cal. 177 (1890). Furthermore, a federal district court noted this last year in the context of an order rejecting a defendant's claim that a plaintiff-homeowner's wrongful foreclosure action should be dismissed because the plaintiff's complaint did not allege a tender. *Vissuet v. IndyMac Bank, FSB* 2010 WL 1031013 at *2. In that case, the Court noted that all of the relevant California appellate cases "indicate[s] that the California 'tender rule' applies only where the plaintiff is trying to set aside a foreclosure sale due to some irregularity." *Id.* Further, the Court noted that "the trustee's sale has not occurred yet" and there is no "bright-line requiring tender where the plaintiff is merely attempting to prevent a trustee sale from proceeding" and that "an offer to pay a debt may not required where doing so would be inequitable." *Id.* at 3 (quoting *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1184 (N.D. Cal. 2009).

Furthermore, the "tender rule" has no absolutely no relevance to the plaintiff's cause of action for a violation of California Civil Code Section 2923.5.  In *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 225, the Fourth District of the California Court of Appeal ruled that it would defeat the purpose of the statute if a borrower was required to tender the indebtedness "prior to the enforcement of the right—the right to be *contacted* prior to the notice of default."

E.   **The Plaintiff's Claims Are Timely Under the "Delayed Discovery" Rule**

The plaintiff acquired this loan in August 2006.  The statute of limitations for a claim brought under UCL § 17200 is four years, *See UCL § 17208*, and the statute of limitations for a claim based on fraud in California is three years, but the three year period does not begin to run until the plaintiff discovers the fraud that has been committed upon him.  Cal. Code Civ. Proc. § 338(d ) (the "delayed discovery" rule).  The "delayed discovery" rule provides that the statute of limitation does not begin to run until the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her.  *Broberg v. Guardian Life Ins. Co. of America* (2009) 171 Cal.App.4th 912, 920. Furthermore, the "delayed discovery" rule applies to claims brought under UCL § 17200.  *Id.*

In the instant case, the plaintiff did not realize that the loan was negatively amortizing (meaning that his monthly payments were not even sufficient to cover the interest due on the loan) until the summer of 2008. **FAC  § 82.**   Furthermore, it was reasonable for him to not discover this until this time, because the plaintiff's payments did not increase and he was fully current on the loan. Consequently, the plaintiff's claims are brought in a timely manner.

Moreover, there is a substantial amount of case law supporting the plaintiff's contention that it was not reasonable for him not to realize that this was a negative amortization loan until less than two years later.  In numerous other cases involving loan documents that failed to

disclose that negative amortization was certain to occur under the payment schedule set forth in the TILDS, Northern District of California courts have ruled that the statute of limitations may be tolled until it was reasonable for the plaintiff to discover this feature of the loan. *See, e.g., Plascenicia v. Lending 1st Mortg.*, 583 F.Supp.2d 1090, 1097 (N.D. Cal. 2008); *Amparan v. Plaza Home Mortg., Inc.*, 678 F.Supp.2d 961, 968-9 (N.D. Cal. 2008); *Appling v. Wachovia Mortg., FSB*, 745 F.Supp.2d 961, 970 (N.D. Cal. 2010).  Since the balance on the plaintiff's loan increased subtly over time, it was likewise reasonable for the plaintiff to not realize that his loan was negatively amortizing (and plaintiff's loan was extremely similar to the loans at issue in the cases cited above).

All that the defendant argues to oppose this claim is to reference some form language in the Deed of Trust, and to cursorily argue that the plaintiff should have been able to have done "simple math" and navigated his way through the obfuscating terms of the defendant's loan. However, this argument cannot be taken seriously by this Court, as the terms of this loan are substantially similar to the cases cited above and to the loan found be to be fraudulent in *Boschma*.  In all of those cases, the Courts ruled that it was reasonable for the plaintiff to have not realized at the time they acquired the loan the method in which the loans negatively amortized.  Thus, the Court should reject the defendant's argument.

**Date: September 30, 2011**

NELSON W. GOODELL
The Goodell Law Firm